IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Donna Zigmantanis, Faith M. Dowden
Meredith Mumpower, Jennifer Newton
Yelizaveta Liokumvich (See attached)

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

Governor Henry McMaster, Henry Knapp
Wanda Hemphill, Chris Whitmire,
John Wells, Joanne Day (See attached)

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial:     ☐ Yes     ☒ No
*(check one)*

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

*See \* Attachment*

Name            Donna Zigmantanis
Street Address            5219 Mount Pleasant Drive
City and County            Myrtle Beach    Horry
State and Zip Code            SC    29579
Telephone Number            602-391-5836

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name            Governor Henry McMaster
Job or Title
(if known)            Governor of South Carolina
Street Address            1100 Gervais Street
City and County            Columbia
State and Zip Code            South Carolina    29201
Telephone Number            803-734-2100

Defendant No. 2

Name            Henry Knapp
Job or Title
(if known)            South Carolina Election Commission Director
Street Address            1122 Lady Street
City and County            Columbia
State and Zip Code            South Carolina    29201
Telephone Number

Defendant No. 3

Name            Wanda Hemphill

2

| | |
|---|---|
| Job or Title (if known) | Commision member Voter Services *Director of* |
| Street Address | 1122 Lady Street |
| City and County | Columbia, |
| State and Zip Code | South Carolina 29201 |
| Telephone Number | 803-734-9060 |

Defendant No. 4

| | |
|---|---|
| Name | Chris Whitmire |
| Job or Title (if known) | Deputy Executive Director |
| Street Address | 1122 Lady Street |
| City and County | Columbia |
| State and Zip Code | South Carolina 29201 |
| Telephone Number | 803-734-9060 |

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

US. Const X, XIV, 403 U.S 388 U.S 1.1 (1964)
USC § 593 595
SC Code § 16-13-230
US Const. art I §1 Hava 52 USC §20901
(see attached for more)

3

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

Plaintiff(s) are not suing for any dollar amount

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

*See attached complaint

The Sec Defendent(s) along with governor Henry McMaster have federalized our state elections. Have not provided a safe way for Defendent(s) to vote. Have violated Plaintiff(s) privacy. Have enabled foreign Inteference in our state elections. Have misused state & Federal funds. Have not followed the US or State constitution

## IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

No more voting on election machines
Hand Counted paper ballots
Cease all federal involvment in State elections
SEC be disbanded and put in the hands of an elected position sos

See attached complaint

That the 2020 election and any proceeding be decertified

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: Aug 29 , 20 22

*see attached complaint for additional Plaintiffs*

Signature of Plaintiff    _Donna Zigmantanis_

Printed Name of Plaintiff    _Donna Zigmantanis_

### B.    For Attorneys

Date of signing: _____, 20__.

| | |
|---|---|
| Signature of Attorney | _____ |
| Printed Name of Attorney | _____ |
| Bar Number | _____ |
| Name of Law Firm | _____ |
| Address | _____ |
| Telephone Number | _____ |
| E-mail Address | _____ |

## UNITED STATES DISTRICT COURT
## SOUTH CAROLINA

| | |
|---|---|
| DONNA ZIGMANTANIS, FAITH M. DOWDEN, MEREDITH MUMPOWER, JENNIFER NEWTON, YELIZAVETA LIOKUMOVICH, ALISON CASE MORGAN, AHMAN JACOB LEMUS CHAVEZ, JAMES DARRYL ROBINSON, MICHAEL D. BRADY, MICHELE NELSON, NANCY TILLER JOHNSON, PAIGE BICKAR, ALISON K. STAROSKY, INDIA ROARK SPRINGS<br><br>     Plaintiff,<br><br>V.<br><br>GOVERNOR HENRY MCMASTER, HENRY KNAPP, WANDA HEMPHILL, CHRIS WHITMIRE, JOHN WELLS, JOANNE DAY, LINDA MCCALL, CLIFFORD EDLER SCOTT MOSELY, MARCI ANDINO<br>     Defendants. | Civil Action No. _____<br><br><br><br>**COMPLAINT** |

DONNA ZIGMANTANIS, Pro Se
5219 Mount Pleasant Drive
Myrtle Beach, South Carolina 29579

and
FAITH M. DOWDEN, Pro Se
108 Shannon Drive
Spartanburg, South Carolina 29301

and
MEREDITH MUMPOWER, Pro Se
102 Back Bay Ct
Summerville, SC 29485

1

and
JENNIFER NEWTON, Pro Se
278 Hilton Village Drive
Chapin, SC 29036

and
YELIZAVETA LIOKUMOVICH, Pro Se
2 Hampton Ridge Drive
Greer, SC 29651

and
ALISON CASE MORGAN, Pro Se
109 W Sparrowood Run
Lexington, SC 29072

and
AHMAN JACOB LEMUS CHAVEZ, Pro Se
3337 Middleburry Lane
Charleston, SC 29141

and
JAMES DARRYL ROBINSON, Pro Se
108 Sand Trap Lane
Greenwood, SC 29649

and
MICHAEL D. BRADY, Pro Se
505 Rainbow Lane Rd
Boiling Springs, SC 29316

and
MICHELE NELSON, Pro Se
4247 Highway 1008
Little River, SC 29566

and
NANCY B. TILLER, Pro Se
69 Lake Forest Drive
Spartanburg, SC 29302

and
PAIGE BICKAR, Pro Se
3123 Conservancy Ln.
Charleston, SC 29414

and
ALISON K. STAROSKY, Pro Se
774 Stratford Run Drive
Fort Mill, SC 29708

and
INDIA ROARK SPRINGS, Pro Se
131 Sunbury Loop
West Columbia, SC 29169

*Plaintiff,*

V.

GOVERNOR OF SOUTH CAROLINA
HENRY MCMASTER
1100 Gervais Street
Columbia, SC 29201

and
SOUTH CAROLINA ELECTION COMMISSION DIRECTOR
HENRY KNAPP
1122 Lady Street, Suite 500
Columbia, SC 29201

and
SOUTH CAROLINA ELECTION COMMISSION DIRECTOR OF VOTER SERVICE
WANDA HEMPHILL
1122 Lady Street, Suite 500
Columbia, SC 29201

and
SOUTH CAROLINA ELECTION COMMISSION DIRECTOR OF PUBLIC INFORMATION
CHRIS WHITMIRE
1122 Lady Street, Suite 500
Columbia, SC 29201

and
SOUTH CAROLINA ELECTION COMMISSION MEMBER CHAIR
JOHN WELLS
1122 Lady Street, Suite 500
Columbia, SC 29201

and
SOUTH CAROLINA ELECTION COMMISSION MEMBER
JOANNE DAY
1122 Lady Street, Suite 500
Columbia, SC 29201

and
SOUTH CAROLINA ELECTION COMMISSION MEMBER
LINDA MCCALL
1122 Lady Street, Suite 500
Columbia, SC 29201

and
SOUTH CAROLINA ELECTION COMMISSION MEMBER
CLIFFORD J. EDLER
1122 Lady Street, Suite 500
Columbia, SC 29201

and
SOUTH CAROLINA ELECTION COMMISSION MEMBER
SCOTT MOSELY
1122 Lady Street, Suite 500
Columbia, SC 29201

and
FORMER SOUTH CAROLINA ELECTION COMMISSION DIRECTOR
MARCI ANDINO
1771 Brittlebush Lane
Johns Island, SC 29455

*Defendants*

# TABLE OF CONTENTS

1. PARTIES TO THE PROCEEDINGS

2. JURISDICTIONS AND VENUE

3. DISCLOSURE

4. PRELIMINARY STATEMENT

5. CONSTITUTIONAL QUESTIONS

6. INTRODUCTION

7. EXCESSIVE FEDERAL INVOLVEMENT IN SOUTH CAROLINA ELECTIONS

8. UNACCREDITED VOTING SYSTEMS TEST LABORATORIES

9. MISUSE OF STATE AND FEDERAL FUNDS

10. FOREIGN INTERFERENCE IN SOUTH CAROLINA ELECTIONS

11. ELECTION MACHINE VULNERABILITY AND CONNECTION TO THE INTERNET

12. PRIVACY VIOLATIONS

13. PRAYER FOR RELIEF

# I. PARTIES TO THE PROCEEDINGS

Plaintiff(s), pro se, hereby file and serve this Complaint against Defendants, Governor Henry McMaster, Henry Knapp, Wanda Hemphill, Chris Whitmire, John Wells, JoAnne Day, Clifford J. Edler, Linda McCall, Scott Moseley, Marci Andino. In support of the claims set forth herein, Plaintiff(s) allege, and cover facts as follows: Defendant(s) knowingly and willfully:

a.  neglected to uphold the Constitution

b.  had foreknowledge of the events unfolding

c.  partnered with agencies that federalized our state elections

d.  chose to perpetrate unconstitutional measures by violating election laws, privacy laws, sovereignty of state laws, as well as misuse of state funds

e.  all of the above constitutes breach of contract through the violations of their Oaths of Office (SC CONST. art. VI § 5, 5 U.S.C. §3331)

1.  As a result of the above-mentioned actions of the Defendants, the quality, security, accuracy, and effectiveness of the Plaintiff(s)' expression of their will, intent, and consent of their vote(s) were impaired and Plaintiff(s) are entitled to remedy under the U.S. Constitution Guarantee Clause. (U.S. CONST. art IV, § 4)

2.  Plaintiff(s) have a vested interest in protecting the quality, accuracy, and effectiveness of their individual votes. Plaintiff(s) demand their votes are cast in a sovereign state without the external interference of Federal Agencies.

3.  Plaintiff(s) seek an Order that the Defendant(s) must adhere to the constitutionally protected process of collecting and counting votes that ensures integrity and transparency. This Order is to require hand-marked paper ballots that can be cast with anonymity,

6

following all South Carolina state election laws. Plaintiff(s) demand that the partnership with Federal Agencies cease and desist, "For Federal Government cannot commandeer a state into enacting a certain law". *New York v. United States, 505 U.S. 144 (1992)*

## II. JURISDICTION AND VENUE

4. Plaintiffs(s) bring this cause of action under the original federal jurisdiction 52 U.S.C. § 20511 (42:15483) HAVA, 42:1983cv Civil Rights Act - Civil Action for Deprivation of Rights, 42:1983vp Violation of Due Process and Equal Protection, 42:1985 Conspiracy to Interfere with Civil Rights, 42:1986 Neglect of Duty, 52 U.S.C. § 10101 (42:1971) Voting Rights Law, 28:1331dp Violation of Due Process (federal question), 28:1331vc Violation of Constitutional Rights (federal question), and cause of action recognized in Ex Parte Young, 209 U.S. 123 (1908) as well as its progeny to challenge government officers' "ongoing violation of federal law and [to] seek prospective relief" under the equity jurisdiction conferred on federal district courts by the Judiciary Act of 1789.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983. Citizens may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the U.S. Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Citizens may sue federal officials for the violation of certain Constitutional rights, because this action seeks to protect civil rights under the Fourteenth Amendment to the United States Constitution.

7

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 because this action seeks to protect civil rights under the Fourteenth Amendment to the United States Constitution.

7. This Court has authority to grant declaratory relief based on 28 U.S.C. §§ 2201, 2202, and Rule 57 of the Federal Rules of Civil Procedure.

8. This Court has jurisdiction to grant injunctive relief based on 28 U.S.C. § 1343(a)(3), and authority to do so under Federal Rule of Civil Procedure 65.

9. There exists an actual and justiciable controversy between Plaintiff(s) and Defendant(s) requiring resolution by this Court.

10. Plaintiff(s) have no adequate remedy at law.

11. Venue is proper before the United States District Court for South Carolina under 28 U.S.C. §1391 (a)(1), which governs the venue of all civil actions brought in district courts of the United States; and (b) A civil action may be brought in (1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located. Because a substantial part of events or omissions giving rise to Plaintiff(s) claims occurred in this district.

### III. RULE 8 DISCLOSURE

12. Plaintiff(s) seek only non-monetary relief.

13. Plaintiff(s) reside under the laws enacted by the South Carolina state legislatures and actions by Defendant(s) referenced below are violations of said laws.

8

## IV. PRELIMINARY STATEMENT

**"Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the rights of Citizens to vote must be carefully and meticulously scrutinized." 377 U.S. 533 (1964)**

14. Defendant(s) have aligned with non-constitutional methods of partnering with federal and/or state agencies. These actions have taken perilous control of the voting rights of the Citizens of South Carolina and have systematically worked to federalize our elections in the state. In this case, we will identify key elements and actions on the part of the Defendant(s) that have stripped the power from the state, as well as the Citizens of South Carolina. Statutes limit federal involvement in elections, and it is illegal for federal agents to interfere in U.S. elections (18 U.S.C. §§ 593, 595).

15. Defendant(s) involvement with such agencies has opened South Carolina Elections to foreign interference, vulnerabilities in the voting chain of command, violations in privacy and misuse of funds that were set up to ensure safe elections. Additionally, Defendant(s) disregarded safeguards set up in the HAVA Act, ensuring that election machines were certified by an accredited testing laboratory.

9

16. Defendant(s) acting as county election boards in South Carolina have aligned with non-constitutional methods of partnering with CISA/DHS through training, site security checks, and leadership of CISA/DHS. (18 U.S.C. §§ 593, 595)

17. All Defendant(s) have violated their oath taken upon office that serves to protect the SC State and US Constitution "so help them God", SC. Const. art. VI, § 5.

18. Defendant(s) failure to protect the State and U.S Constitution and Plaintiff(s) right to suffrage in free and fair elections, as well as Defendant(s) failure to protect the sovereignty of the State of South Carolina (US CONST. amend X).

## V. CONSTITUTIONAL QUESTIONS

19. The specific questions brought before this Court are:

a.  If the electronic voting systems are not lawfully certified in compliance with voting system standards, does it impede the Plaintiff(s) lawful vote in elections (S.C. Const. art. II, § 1, US CONST. amend XIV)?

b.  b.  If the electronic voting systems and their various devices are not lawfully certified, does it cause the Plaintiff(s) to cast illegal ballots (52 U.S.C. § 10307(a), (Due Process Clause)?

c.  Defendant(s) partnerships with foreign election equipment vendors, including MOUs with foreign countries under the CISA partnership, pose vulnerabilities for foreign interference

10

in SC elections systems. Do these partnerships impede the Plaintiffs(s) lawful vote in elections (Exhibit A)?

d. Did the Defendants(s) partnerships with both state and federal agencies violate the privacy of South Carolina Citizens' data and privacy (Privacy act of 1975) (S.C. Const. art. I, § 10)?

e. Have Defendant(s) positions on alternative boards and agencies compromised the security of South Carolina Elections and created a conflict of interest in their role (S.C. Const. art. VI, § 3)?

f. South Carolina officials presented uncertified voting systems as certified and as not connected to the internet. Did they abridge the Plaintiff(s) federally protected right to vote, as well as affront SC CODE 16-9-10, 18 U.S.C. § 245?

g. Did the Defendant(s) partnership with federal agencies create an overreach of power on the state level? Did this partnership work to federalize SC state elections and jeopardize the sovereignty of the State of South Carolina (U.S.C amend X)?

h. State funds and HAVA- granted funds were allotted for a voting system that is certified by a testing laboratory, "accredited by the Federal Election Assistance Commission meeting or exceeding the minimum requirements of federal voting standards" {SC Code 7-13-1620 (2019)}. Since accreditation procedures were not properly followed, have the

11

Defendant(s) violated (SC Code § 16-13-230)?  In 2019 South Carolina spent over 51 million dollars of HAVA granted and state funds for new voting equipment (Exhibit B).

i. What is the Constitutional remedy for the usurpation of the Defendants(s) role as the underlying governmental authority, and for forcing the Plaintiff(s) to participate in their own servitude through fraudulent policies, systems, and measures (US CONST. amend XIII § 1 and US CONST. amend X)?

## VI. INTRODUCTION

20. Plaintiff(s) have performed all necessary conditions as precedent to bring this suit.

21. The United States and South Carolina Constitutions protect Citizens' First Amendment rights, including the right to petition the government to seek resolution for grievances.

22. Plaintiff(s) have not received justice in the matter of investigating the 2020 General Election and are being forced to utilize the same uncertified, internet-connected voting machines used in the November 2, 2020 election and for all elections following the 2020 General Election.

23. Plaintiff(s) come before this court with the acquired knowledge that Citizens of SC are free solely on paper.  Plaintiff(s) attempted to exercise their Constitutional rights to duly elect state and federal officials, but Plaintiff(s) rights have been deprived, due to lack of integrity and accountability. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good Citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." (*Wesberry v. Sanders, 376 U.S. 1, 1 (1964).*

12

## VII. EXCESSIVE FEDERAL INVOLVEMENT IN SC STATE ELECTIONS

"Let it be the wisdom of each state to decide the future of our nation."

– James Madison

24. Under the U.S. Constitution and federal law, states, not the federal government, are responsible for administering elections. "The times, places and manner of holding Elections . . . shall be prescribed in each state by the legislature thereof . . . ." (U.S. Const. art. I, § 1.)

25. Plaintiff(s) have unconstitutionally aligned with CIS® (Center for Internet Security®), the Department of Homeland Security's (DHS) Cybersecurity and Infrastructure Security Agency (CISA), and the Election Infrastructure Subsector Government Coordinating Council (EIS-GCC) by partnering through training, site security checks and leadership connecting between agencies. This initiative dates back to January, 2017 (Exhibit C)

26. CISA is a federal government agency that has not only captured South Carolina's ways of voting, but also has involvement in South Carolina water, telecommunications, cybersecurity, COVID- response and FEMA (Exhibit D). The Defendant(s) have partnered with CISA, without any oversight from SC legislative body nor Citizenry, under the guise of election security. This is a direct violation of (U.S. Const. art. I, § 1).

27. Elections in South Carolina should not collude with "infrastructure," nor should South Carolina be combined with other state regions, as detailed in CISA regional mapping (Exhibit F2).

13

28. The Defendant(s) membership in the EIS under CISA coordinate with government and non-government subsector stakeholders (private/public partnerships) to plan, implement, and execute the nation's critical infrastructure security and resilience mission as it relates to election security (Exhibit F).

29. Since January 2017 the Defendant(s) have followed the instruction DHS and their affiliated organizations have mapped out to execute our State Elections and in return weakened the sovereignty of our State.

30. Let it be known to the court that the Board includes the following federal agencies. The EIS GCC membership shall include the following non-voting members:

- State, Local, Tribal, and Territorial Government Coordinating Council
- U.S. Election Assistance Commission
- U.S. Department of Commerce, National Institute of Standards and Technology
- U.S. Department of Defense, Federal Voting Assistance Program
- U.S. Department of Homeland Security, Cybersecurity and Infrastructure Security Agency, National Risk Management Center
- U.S. Department of Homeland Security, Office of Intelligence and Analysis, U.S. Department of Justice, Federal Bureau of Investigation
- United States Postal Service
- United States Postal Service Office of the Inspector General
- United States Postal Inspection Service

31. The Defendant(s) have created an alliance with CISA under Region 4 that combines cybersecurity and election security with 7 additional states:( Exhibit F2)

14

- **Alabama**
- **Florida**
- **Georgia**
- **Kentucky**
- **Mississippi**
- **North Carolina**
- **South Carolina**
- **Tennessee**

32. CISA region 4 regional personnel work with critical infrastructure partners and communities at the regional, state, county, tribal, and local levels in South Carolina. Interstate alignment through a federal organization violates (18 U.S.C. §§ 593, 595). This Region 4 also facilitates information-sharing between public and private sector critical infrastructure partners, in violation of (South Carolina Constitution art I § 10). (Exhibit F2).

33. Defendant(s)/ knowing that DHS was involved in hacking in the 2016 Election in Georgia, still negligently partnered with DHS and federal agencies for cybersecurity, putting South Carolina elections in jeopardy for vulnerabilities and federal overreach. This partnership with DHS also defeats the purpose of security if, in fact, they are the perpetrators of hacking (Exhibit F3). Federal Agencies' involvement is illegal. Even outside US polling locations from the polls it is illegal for federal agents to interfere in the election (18 U.S.C. §§ 593, 595).

34. In *McPherson v. Blacker* (1892), the Supreme Court reaffirmed state control in holding that the Constitution "leaves it to the [state] legislature exclusively" in how a state conducts presidential elections.

15

35. The Defendant(s) membership in CISA and the Election Infrastructure Subsector directly violates the (U.S. Const. art. I, § 1) in a way that attempts to federalize SC elections and partners SC with several federal agencies in "planning, implementing, and executing" our elections.

36. The Defendants(s) also coordinated with DHS and the EIS GCC to develop, recommend, and review sector-wide plans, procedures, and effective practices in support of infrastructure protection, including training, education, and implementation (Exhibit G).

37. Defendant(s), through CISA, have also been involved in the (EISCC) Election Infrastructure Subsector Coordinating Council. A membership that is available to any owner or operator with significant business or operating interests in U.S. election infrastructure systems or services, as defined by the January 2017 Department of Homeland Security Critical Infrastructure Declaration: *"By election infrastructure, we mean storage facilities, polling places, and centralized vote tabulations locations used to support the election process, and information and communications technology to include voter registration databases, voting machines, and other systems to manage the election process and report and display results on behalf of state and local governments" (Exhibit H).* This partnership is a direct violation of (U.S. Const. art. I, § 1), as it is directly linked with the federal DHS agency, an action which is not supported in the South Carolina Constitution and violates (18 U.S.C. §§ 593, 595).

38. The Election Infrastructure Subsector Coordinating Council includes election machine vendors, ENR software, and AP press (Exhibit H). These partnerships severely jeopardize the security of SC elections to be controlled at the state level, without being influenced. This is another violation against (U.S. Const. art. I, § 1), as well as failing to protect our vote as Citizens of the United States.

16

39. The Defendant(s), through their partnership with CISA, have also joined CIS, MS-ISAC (Multi State Information Sharing and Analysis Center) ISAC (Election Infrastructure). Under these partnerships, the Defendant(s) have willingly given control of hardware and software used in SC elections to federal agencies.



40. Through agreements made by Defendant(s) with CISA, Defendant(s) have also joined CIS, MS-ISAC (Multi State Information Sharing and Analysis Center) and ISAC (Election Infrastructure). These partnerships have given unconstitutional control of cybersecurity services, provided and supported by election offices and related associations in the State of South Carolina to federal agencies. (Exhibit I, J)

41. IDS, known as Albert, a focus of EI-ISAC's efforts, was a federally-funded initiative deployed on state election networks in the United States and in South Carolina. The EI-ISAC also used Albert to monitor voter registration databases. All public-facing IP addresses, ranges, and domains in the State of South Carolina were shared by Defendant(s) with EI-ISAC & (Ex J).

42. No right is more precious to Citizens in a free country than that of having a voice in the election of those offices that create the laws under which, Citizens must adhere to. Other rights,

17

even the most basic, are illusory if the right to vote is undermined. The Defendant(s) decisions to federalize the election process has continually violated (18 U.S.C. §§ 593, 595).

43. The South Carolina Constitution does not grant authority to CISA, CIS, EI-ISAC and/or DHS to be involved or influence SC State Elections.

44. Although SEC is granted oversight of South Carolina elections, it does not have authority to ignore (U.S. Constitution art. I, § 1 and/or 18 U.S.C. §§ 593, 595). Additionally, the SEC does not have the authority to ignore (SC Constitution Art. I, § 8) which states that "in that the government shall be forever separate and distinct from each other. No person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other".

45. Defendant(s) openly admit to DHS and CISA involvement in SC county elections (Exhibit G)

## VIII. UNACCREDITED VOTING SYSTEM TEST LABORATORIES

46. The Help America Vote Act of 2002 (HAVA) [1], was passed by the United States Congress to address improvements to voting systems and voter access following the 2000 election recount and "hanging Chad" confusion. [2]

47. HAVA creates mandatory minimum standards for states to follow for several areas of election administration. [3]

48. HAVA law provides funding to help states meet new standards, replace and purchase new voting systems, and improve election administration, such as security.

49. HAVA established the Election Assistance Commission (EAC) to assist states in HAVA compliance and to distribute HAVA funds.

50. EAC is charged with regulating and creating voting system guidelines and operating/managing the first federally run voting system certification program.[4]

51. HAVA provided directives to the National Institute of Standards and Technology (NIST) to assist the EAC in its accreditation of voting system testing laboratories (VSTL).[5][6]

52. When the NIST evaluates laboratories to assess accreditation, the NIST relies on the National Voluntary Laboratory Accreditation Program (NVLAP) to determine competency. An on-site review of the lab is required to take place and the lab is required to demonstrate competency in performing multiple tasks in a voting system review.[7]

[1] https://www.eac.gov/about_the_eac/help_america_vote_act.aspx (Last visited 5/20/22)
[2] See U.S.C. § 20922
[3] https://www.eac.gov/sites/default/files/eac_assets/1/6/HAVA41.PDF (Last visited 5/20/22)
[4] See 52 U.S.C.§ 20962, 20971
[5] See 42 U.S.C. § 15371(b)
[6] https://www.eac.gov/voting-equipment/voting-system-test-laboratories-vstl (Last visited 5/20/22)

[7] https://www.thegatewaypundit.com/2022/05/exclusive-based-thorough-review-election-regulations-not-single- voting-system-testing-lab-used-2020-election-accredited-based-law-part/ (Last visited 5/20/22)

53. EAC and NIST work together assessing laboratories to evaluate whether they can be accredited. The NIST relies on the NVLAP to determine competency.

54. EAC developed the EAC's Voting System Test Laboratory Accreditation Program. The procedural requirements of this program are contained in:

    1.  EAC's Voting System Test Laboratory Accreditation Program manual[8]

19

   2.  EAC's Voting System Test Laboratory Program manual (OMB 3265-0018)[9]

55. Pro V&V and SLI Compliance, per the EAC, were the only two accredited VSTLs during the 2020 General Elections and are presently the only two accredited VSTLs for all future elections.

56. VSTLs are responsible for the examination of the use of Commercial Off-The-Shelf (COTS) components as well as the examination of other applications, software, and components deemed to be proprietary.[10]

57. Voting System Test Laboratory Program manual ver. 2.0, effective May 31, 2015, page 38.

58. Sec 3.6.1. Certificate of Accreditation: A Certificate of Accreditation shall be issued to each laboratory by vote of the Commissioners. The certificate shall be signed by the **CHAIR** of the Commission and state:

> 3.6.1.  **Certificate of Accreditation.** A Certificate of Accreditation shall be issued to each laboratory accredited by vote of the Commissioners.
>
> 3.6.1.1.  The name of the VSTL;
>
> 3.6.1.2.  The scope of accreditation, by stating the Federal standard or standards to which the VSTL is competent to test;
>
> 3.6.1.3.  ███████████████████████████████████████████
>
> 3.6.1.4.  The technical standards to which the laboratory was accredited.

59. "The effective date of the certification, which shall not exceed a period of two (2) years...."

[8]https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf (Last visited 5/20/22)

[9] https://www.eac.gov/sites/default/files/eac_assets/1/6/Cert_Manual_7_8_15_FINAL.pdf (Last visited 5/20/22)

[10] https://www.eac.gov/sites/default/files/EAC_FACT_SHEET_Testing_and_Certification_Program.pdf (Last visited 5/20/22)

60. Both the date and the signature on the Lab Certification of Accreditation is required.

61. Commission Chairmen only serve one (1) year, but their signature is valid on these certificates for two (2) years.

62. Both the date and the signature on the Lab Certification of Accreditation is required.

63. Both Donald Palmer AND Benjamin Hovland were appointed by President Trump and confirmed in the senate on Feb. 4, 2019, as EAC Commissioners, but not Chairmen.[11]

64. Donald Palmer was elected Commission Chairman Feb. 24, 2021.[12]

65. Benjamin Hovland was appointed Commission Chairman Feb. 2020.[13]

66. Neither Palmer nor Hovland have given valid signatures on the Laboratory Certificates of Accreditation, since none were issued in 2020. Quorum, according to the EAC was not restored until appointment of Palmer and Hovland on Feb. 4, 2019.

67. Christy McCormick was elected as Commission Chairwoman on Feb. 24, 2019.[14]

68. For the 2020 General Election, Christy McCormick's signature should have been on **ALL** EAC Laboratory Certificates of Accreditation.

21

69. According to a list of South Carolina's own requirements, posted on the EAC's website and the U.S. Election Assistance Commission Voting System Testing and Certification Program, the State of South Carolina participates as set forth:[15]

[11] https://www.eac.gov/news/2019/02/06/commissioners-hovland-palmer-sworn-restore-quorum-eac (Last visited 5/20/22)

[12] https://www.eac.gov/news/2021/02/24/donald-palmer-begins-term-eac-chairman Last visited 5/20/22

[13] https://www.eac.gov/news/2020/02/27/benjamin-hovland-begins-term-eac-chairman Last visited 5/20/22

[14] https://www.eac.gov/news/2019/02/22/mccormick-elected-new-eac-chairwoman Last visited 5/20/22

[15] https://www.eac.gov/sites/default/files/TestingCertification/State_Requirements_for_Certification09042020.pdf Last visited 5/20/22

## SOUTH CAROLINA

*State Participation:* **Requires testing to federal standards/Requires testing by a federally accredited laboratory.** South Carolina requires that its voting systems are certified by an FEC accredited testing laboratory as meeting or exceeding the requirements of federal voting system standards.

*Applicable Statute(s):* "Before any kind of voting system, including an electronic voting system, is used at an election, it must be approved by the State Election Commission, which shall examine the voting system and make and file in the commission's office a report, attested to by the signature of the commission's executive director, stating whether, in the commission's opinion, the kind of voting system examined may be accurately and efficiently used by electors at elections, as provided by law. A voting system may not be approved for use in the State unless certified by a testing laboratory accredited by the Federal Election Assistance Commission as meeting or exceeding the minimum requirements of federal voting system standards." SC Code § 7-13-1620 (2019)

*Applicable Regulation(s):* N/A

The manual also states that VSTLs must renew their accreditation in a timely manner.

22

**3.8.** **Expiration and Renewal of Accreditation.** A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated on the Certificate of Accreditation. VSTLs in good standing shall renew their accreditation by submitting an application package to the Program Director, consistent with the procedures of Section 3.4 of this Chapter, no earlier than 60 days before the accreditation expiration date and no later than 30 days before that date. Laboratories that timely file the renewal application package shall retain their accreditation while the review and processing of their application is pending. VSTLs in good standing shall also retain their accreditation should circumstances leave the EAC without a quorum to conduct the vote required under Section 3.5.5.

70. The EAC issued the modifications to the manual regarding section 3.8 on July 23, 2021[16] without proper action under 52 U.S.C. §551 *et seq.*, HAVA, 52 U.S.C. §20901 *et seq*, and Federal Advisory Committee Act (FACA), 5 U.S.C. app. 2 §1-15. Modifications shall be reviewed and commented on by the EAC Board of Advisors and the EAC Standards Board or the requirement by HAVA and the APA guidelines of any modifications shall be provided to the public for notice and comment prior to approval. *52 U.S.C. §20962, APA 5 U.S.C. §551 et seq.*

> A. HAVA prohibits the EAC from voting to adopt final guidelines until it has given both the Board of Advisors and the Standards Board 90 days to review and comment on the proposed guidelines and has "tak[en] into consideration" their comment process and recommendations. *Id. § 20962(d)(1)-(2).*

> B.  HAVA additionally requires a public notice and comment process that includes publication of the proposed guidelines in the Federal Register, opportunity for public comment on the proposed guidelines, and opportunity for a public hearing on the record. *Id. §20962(a)(1)-(3).*

71. SLI Compliance Certification, issued January 10, 2018, effective Jan. 10, 2021. (Exceeding two (2) years – Should be signed by Chair of Commission)[17]

23

[16] https://www.eac.gov/sites/default/files/2021-07/NOC%2021.01_VSTL%20Accreditation%20Status_1.pdf (Last visited 5/20/22)

[17]https://www.eac.gov/sites/default/files/voting_system_test_lab/files/SLI_Compliance_Certificate_of_Accreditation0 11018.pdf (Last visited 5/20/22)



72. Pro V&V, EAC Certification, issued February 24, 2015, effective through Feb. 24, 2017,[18]

(Should be signed by Chair of Commission).



**United States Election Assistance Commission**

**Certificate of Accreditation**

## Pro V&V, Inc.
## Huntsville, Alabama

*is recognized by the U.S. Election Assistance Commission for the testing of voting systems to the 2005 Voluntary Voting Systems Guidelines under the criteria set forth in the EAC Voting System Testing and Certification Program and Laboratory Accreditation Program. Pro V&V is also recognized as having successfully completed assessments by the National Voluntary Laboratory Accreditation Program for conformance to the requirements of ISO/IEC 17025 and the criteria set forth in NIST Handbooks 150 and 150-22.*

*Effective Through*

EAC Lab Code: **1501**

[18]https://www.eac.gov/sites/default/files/voting_system_test_lab/files/Pro_VandV_accreditation_certificate_2015.pdf

(Last visited 5/20/22)

73. SLI Compliance Certification original issued Feb. 28, 2007, dated Feb. 1, 2021. (Exceeding two (2) years – Should be signed Chair of Commission)[19]

25

VSTL Program Manual v 2 0 page 37
3.6. Grant of Accreditation. Upon a vote of the EAC Commissioners to accredit a laboratory. The Testing and Certification Program Director shall inform the laboratory of the decision issue a Certificate of Accreditation and post information regarding the laboratory on the EAC Web site



United States Election Assistance Commission

**Certificate of Accreditation** ✓    Certificate for the Lab

# SLI Compliance
## Division of Gaming Laboratories International. LLC
## Wheat Ridge, Colorado

is recognized by the U.S. Election Assistance Commission for the testing of voting systems to the 2005 and 2015 Voluntary Voting Systems Guidelines (VVSG 1.0 & 1.1) under the criteria set forth in the EAC Voting System Testing and Certification Program and Laboratory Accreditation Program. SLI Compliance is also recognized as having successfully completed assessments by the National Voluntary Laboratory Accreditation Program for conformance to the requirements of ISO/IEC 17025 and the criteria set forth in NIST Handbooks 150 and 150-22

VSTL Program Manual v 2 0 page 36
3.6.1. Certificate of Accreditation    The certificate shall be signed by the Chair of the Commission and state

Original Accreditation Issued on  2/24/2015

a. conditions remain effective until revoked by a vote of the EAC pursuant to 52 U.S.C.

b. continuing review by National Institute of Standards and Technology.
c. Approval by Commission required for revocation.
The accreditation of a laboratory for purposes of this section may not be revoked unless the revocation is approved by a vote of the Commission.

Should be signed by EAC Chairman NOT Executive Dir

Date

Mona Harrington
Executive Director  U.S. Election Assistance Commission

EAC Lab Code  8701

19https://www.eac.gov/sites/default/files/voting_system_test_lab/files/SLI%20Certificate%20of%20Accreditation%20 2021.pdf (Last visited 5/20/22)

74.. Pro V&V, EAC Certification, original issued Feb. 24, 2015, dated Feb. 21, 2021. (Exceeding two (2) years – Should be signed by Chair of Commission)[20]

26



United States Election Assistance Commission    Certificate for the Lab

## Certificate of Accreditation

### Pro V&V, Inc.
### Huntsville, Alabama

Is recognized by the U.S. Election Assistance Commission for the testing of voting systems to the 2005 and 2015 Voluntary Voting Systems Guidelines (VVSG 1.0 & 1.1) under the criteria set forth in the EAC Voting System Testing and Certification Program and Laboratory Accreditation Program. Pro V&V is also recognized as having successfully completed assessments by the National Voluntary Laboratory Accreditation Program for conformance to the requirements of ISO/IEC 17025 and the criteria set forth in NIST Handbooks 150 and 150-22.

Original Accreditation Issued on: 2/24/2015

Accreditation remains effective until revoked by a vote of the EAC pursuant to 52 U.S.C. § 20971(c)(2).

Mona Harrington
Executive Director, U.S. Election Assistance Commission

Date: 2.1.21

EAC Lab Code: 1501

75.. Taking into consideration the certificates issued in 2021, the Certificates of Accreditation have multiple issues indicating they are **NOT** in compliance with laws and guidelines set by HAVA and the state of South Carolina.

76. The accreditations are not signed by Thomas Hicks, the Chair of the Commission, but by the EAC Executive Director, Mona Harrington. Mona Harrington has never been a commissioner.

[20] https://www.eac.gov/sites/default/files/voting_system_test_lab/files/Pro%20V%26V%20Accreditation%20Certificate.pdf (Last visited 5/20/22)

## EAC's Commissioners

Thomas Hicks and Christy McCormick were sworn in January 13, 2015 as EAC commissioners following their nomination by President Barack H. Obama and unanimous confirmation by the U.S. Senate. Benjamin Hovland and Donald Palmer were sworn in on February 4, 2019 as EAC commissioners following their nomination by President Donald Trump and unanimous confirmation by the U.S. Senate.

Commissioner Thomas Hicks, Chairman

Commissioner Christy McCormick, Vice Chair

Commissioner Benjamin W. Hovland

Commissioner Donald L. Palmer

77. A vote for a VSTL's re-accreditation is taken by the EAC and passed by a vote of (3) three Commissioners. The EAC did not meet quorum for the year 2018, due to having only two (2) commissioners. Until Hovland and Palmer were nominated; no quorum was met until Feb. 2019, in which Christy McCormick's signature would have been required.

78. Therefore, zero VSTLs were properly accredited for the 2020 General election on November 3, 2020 and continue to be unaccredited due to lack of compliance.

79. EAC provided the following for SLI Compliance[21] and Pro V&V[22] dated January 21, 2021, stating COVID-19 circumstances, which were not in accordance to VSTL Version 2.0 Section 3.8. ("**PRE**" COVID-19 pandemic).

80. Re-accreditation should have been properly issued in 2017 and 2018, respectively, prior to COVID-19. Therefore, the COVID-19 excuse for not properly issuing re-accreditation fails and suggests intentional dishonesty.

81. During quorum, the EAC is required to vote on re-accreditation. There was no quorum met for a year prior to 2019.

82. Accreditation would not have been possible in the 2020 General Election to be in accordance with HAVA of 2002 Section 231(b). The Voluntary Voting System Guidelines were in violation

28

of the law. Quorum would have needed to be met before any real or perceived complications due to the COVID-19 pandemic.

21.https://www.eac.gov/sites/default/files/voting_system_test_lab/files/SLI_Compliance_Accreditation_Renew al_dela y_memo012721.pdf (Last visited 5/20/22) 25

22https://www.eac.gov/sites/default/files/voting_system_test_lab/files/Pro_VandV_Accreditation_Renewal_del ay_me mo012721.pdf (Last visited 5/20/22)



**U.S. ELECTION ASSISTANCE COMMISSION**
633 3rd St. NW, Suite 200
Washington, DC 20001

**FROM:**    Jerome Lovato, Voting System Testing and Certification Director

**SUBJECT:**    SLI Compliance EAC VSTL Accreditation

**DATE:**    1/27/2021

SLI Compliance, a division of Gaming Laboratories International, LLC (SLI) has completed all requirements to remain in good standing with the EAC's Testing and Certification program per section 3.8 of the Voting System Test Laboratory Manual, version 2.0:

> *Expiration and Renewal of Accreditation. A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated on the Certificate of Accreditation. VSTLs in good standing shall renew their accreditation by submitting on application package to the Program Director, consistent with the procedures of Section 3.4 of this Chapter, no earlier than 60 days before the accreditation expiration date and no later than 30 days before that date. Laboratories that timely file the renewal application package shall retain their accreditation while the review and processing of their application is pending. VSTLs in good standing shall also retain their accreditation should circumstances leave the EAC without a quorum to conduct the vote required under Section 3.5.5.*

Due to the outstanding circumstances posed by COVID-19, the renewal process for EAC laboratories has been delayed for an extended period. While this process continues, SLI retains its EAC VSTL accreditation.

29



**U.S. ELECTION ASSISTANCE COMMISSION**
*633 3rd St. NW, Suite 200*
*Washington, DC 20001*

**FROM:**    Jerome Lovato, Voting System Testing and Certification Director

**SUBJECT:**    Pro V&V EAC VSTL Accreditation

**DATE:**    1/27/2021

Pro V&V has completed all requirements to remain in good standing with the EAC's Testing and Certification program per section 3.8 of the Voting System Test Laboratory Manual, version 2.0:

> *Expiration and Renewal of Accreditation. A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated on the Certificate of Accreditation. VSTLs in good standing shall renew their accreditation by submitting an application package to the Program Director, consistent with the procedures of Section 3.4 of this Chapter, no earlier than 60 days before the accreditation expiration date and no later than 30 days before that date. Laboratories that timely file the renewal application package shall retain their accreditation while the review and processing of their application is pending. VSTLs in good standing shall also retain their accreditation should circumstances leave the EAC without a quorum to conduct the vote required under Section 3.5.5.*

Due to the outstanding circumstances posed by COVID-19, the renewal process for EAC laboratories has been delayed for an extended period. While this process continues, Pro V&V retains its EAC VSTL accreditation.

83. EAC, on July 22, 2021 provided VSTL accreditation pages on its website for both Pro V&V[23] and SLI[24] compliance. These accreditation pages do not make up for the lack of proper and legal accreditations.

---

[1] Pro V&V was accredited by the EAC on February 24, 2015, and SLI Compliance was accredited by the EAC on February 28, 2007. Federal law provides that EAC accreditation of a voting system test laboratory cannot be revoked unless the EAC Commissioners vote to revoke the accreditation: "The accreditation of a laboratory for purposes of this section may not be revoked unless the revocation is approved by a vote of the Commission." ▮▮▮▮▮▮▮▮▮▮▮▮▮ The EAC has never voted to revoke the accreditation of Pro V&V. Pro V&V has undergone continuing accreditation assessments and had new accreditation certificate issued on February 1, 2021.

84. 3.6.1.3. "The effective date of the certification, which shall not exceed a period of two (2) years." To revoke is the process of **"taking away"**. The accreditation was not "taken away". The

regulation clearly states that the accreditation is for (2) two-year periods only. The EAC's use of this section is disingenuous.

85. {52 U.S. Code § 20971(c)(2)} is not applicable to 3.6.1.3 and the effective date of the accreditation, as the accreditation **EXCEEDED** the period of two (2) years. The statute does not refer to continued accreditation due to any failure of action by the private laboratories and/or the EAC Program Director. This is erroneous reasoning at best, fraud at worst. Pro V&V and SLI Compliance were not accredited laboratories in accordance with HAVA of 2002 § 231(b). The EAC is not a legislative body and cannot create or establish law, but must abide by HAVA of 2002. Therefore, this is an overreach of power by disregarding the law set forth by HAVA of 2002 Section 231(b) and the federal legislative body.

86. Note that the same document provides another excuse as to why the VSTLs are not properly accredited. Accordingly, the "Accardi" decision requires that even governmental officials must follow agency regulations and guidelines. By the EAC's own admission of "administrative error," the foundation of the rule of law under the Accardi doctrine, the EAC did not observe their own rules and guidelines. Therefore, the EAC violated the laws set by HAVA, affording a domino-effect of substantive restraints and violations of protected persons (class) from arbitrary or capricious treatment, thus violating Plaintiff(s) voting rights as well.

████████████████████████████████, the███████████████████████████████████████
causing confusion with some people concerning their good standing status. Even though the EAC failed to reissue the certificate, Pro V&V's audit was completed in 2018 and again in early 2021 as the scheduled audit of Pro V&V in 2020 was postponed due to COVID-19 travel restrictions. Despite the challenges outlined above, throughout this period, Pro V&V and SLI Compliance remained in good standing with the requirements of our program and retained their accreditation. In addition, the EAC has placed appropriate procedures and qualified staff to oversee this aspect of the program ensuring the continued quality monitoring of the Testing and Certification program is robust and in place.

31

[23.] https://www.eac.gov/voting-equipment/voting-system-test-laboratories-vstl/pro-vv (Last visited 5/20/22)
[24.] https://www.eac.gov/voting-equipment/voting-system-test-laboratories-vstl/sli-compliance-division-gaming-laboratories (Last visited 5/20/22)

87. Voting systems in South Carolina must be EAC certified, according to the South Carolina voting laws (SC Code § 7-13-1620 (2019).

## IX. MISUSE OF STATE/FEDERAL FUNDS

88. On July 1, 2019, Election Systems & Software (ES&S) was awarded the bid for a new statewide Voting System. Purchase price was $50,888,359.00 (Exhibit B).

89. Since 2018, the State of South Carolina has received $19,206,371.00 from EAC (Exhibit K). Under the conditions of receiving the EAC funding, the stipulation was that all voting systems be certified by an accredited testing laboratory accredited by the Federal Election Assistance Commission, meeting or exceeding the minimum requirements of federal voting system standards. {SC Code § 7-13-1620 (2019)}

90. Since the machines were not properly certified and did not follow South Carolina constitutional law, the Defendants are in violation of (SC Code § 16-13-230).

## X. FOREIGN INTERFERENCE IN ELECTION

91. DNI John Ratcliff stated, "China and Iran interfered in the 2020 election" and the CIA attempted to hide evidence of interference from the American Citizens (Exhibit L). Defendant(s) have refused to admit, or even investigate election fraud or problems in the South Carolina General Election of 2020, nor the Primary Election of 2022.

92. South Carolina uses SCYTL, a company based out of Spain to do all ENR reporting (Exhibit M) website showing ENR as well as emails), as well as "comprehensive training" (Exhibit N). Defendant Marci Andino, who served as Executive Director of the SC SEC during the 2020 General Election, also left a positive review for SCYTL on the SCYTL website. Defendant(s) stated through correspondence that SCYTL was only used for ENR. However, on SCYTL's website, Marci Andino admits that they were an important part of developing training provided to "all workers".

93. The use of a foreign company to count U.S. votes offshore is a direct violation of EO 13848 (Exhibit A ): "persons located, in whole or in substantial part, outside the United States to interfere in or undermine public confidence in United States elections, including through the unauthorized accessing of election and campaign infrastructure or the covert distribution of propaganda and disinformation, constitutes an unusual and extraordinary threat to the national security and foreign policy of the United States. Although there has been no evidence of a foreign power altering the outcome or vote tabulation in any United States election, foreign powers have historically sought to exploit America's free and open political system. In recent years, the proliferation of digital devices and internet-based communications has created significant vulnerabilities and magnified the scope and intensity of the threat of foreign interference, as illustrated in the 2017 Intelligence Community Assessment. I hereby declare a national emergency to deal with this threat".

94. The use of SCYTL in South Carolina elections undermine the confidence of the Plaintiff(s) votes.

33

95. The Defendant(s) partnership with CISA imposes a great risk due to cybersecurity provisions under CISA. CISA is directly signing Memorandums of Understanding (MOUs) with foreign countries such as Saudi Arabia and China (Exhibit O) as of 2021.

96. The foreign involvement and/or interference in U.S. and South Carolina elections, does not give Plaintiff(s) confidence in the elections conducted in 2020 or in any future elections (SC CODE 16-9-10, 18 U.S.C. § 245).

# XI. ELECTION MACHINE VULNERABILITY AND CONNECTION TO INTERNET

97. The voting systems used in the November 2020 General Election, and scheduled to be used in the November 2022 elections, in South Carolina, are manufactured by Election Systems and Software (ES&S) – Express Vote according to the Defendant(s) and the South Carolina SEC (Exhibit P).

98. All voting systems in use in the United States, currently, and at the time of the 2020 General Election, are subject to tampering through a "Trapdoor" mechanism, inherent in all election systems. This "Trapdoor" mechanism is described in detail in (Exhibit Q), affidavit of Terpsehore Maras, filed under penalty of perjury on December 1, 2020 in case #2:20-cv-01771-PP in the 2nd Judicial District of the Denver District Court in Denver, Colorado.

99. The key aspect and summary of the sometimes-technical affidavit in layman's terms, is its paragraph 61: "Hence, you can't prove anyone manipulated anything. The TRAPDOOR KEY HOLDERS can offer you enough to verify to you what you need to see without revealing

34

anything and once again indicating the inability to detect manipulation. ZERO PROOF of INTEGRITY OF THE VOTE."

100. The problem with verifying that any voting machine system gives a fair outcome, where the vote output is identical to the vote input, is that due to the "Trapdoor" mechanism it is impossible to prove that the election was fair. This proof is the responsibility of the Secretary of State.

101. It is also impossible to prove that the election was unfair. However, the burden is on the Defendant(s) to prove that the systems are not only capable of conducting, but in fact conducted, a fair election.

102. According to the South Carolina SEC website, election equipment and machines are not hooked up to the internet (Exhibit R). According to an email from Defendant Chris Whitmire, the election machines are not connected to the Internet (Exhibit S). However, ES&S states that the poll books have "a web-based application that allows election officials to monitor poll activity from connected ExpressPoll devices used across the jurisdiction, in near-real time." The ExpressPoll devices would be able to connect to a central server "by way of MiFi device provided by a telecommunications provider such as Verizon," the document stated. MiFi devices are portable, wireless routers that act as Wi-Fi hotspots. They can connect to cell phone networks and provide internet access for multiple devices.[25]

103. DHS/CISA/CIS involvement and partnerships with the South Carolina SEC are based on prevention of cyberattacks on elections. How can cyberattacks occur if there is not a connection to the internet? Why would there need to be firewalls, patching, and cybersecurity training? We

ask the Defendant(s) to prove that no internet connection exists in the voting systems used in South Carolina.

104. Since 2018, election officials, political organizations, and campaigns implemented significant defensive measures to enhance the security of their infrastructure and limit the disruptive potential of an intrusion. Implementing defensive measures such as firewalls, up-to-date patching, multifactor authentication, pre-election testing of voting equipment, federal and state certification of such equipment, cybersecurity training for government personnel, and separation of election-specific systems from other computer networks all helped to protect the integrity of infrastructure. Implementing redundancy measures like paper pollbooks backups, auditable ballots, and post-election audits ensures election officials could limit the impact of a cyber incident .[26]

105. We ask the court to take into consideration how SCYTL, a foreign company based out of Spain, is able to provide real-time Election Night Reporting (ENR) services for the State of South Carolina if, in fact, there is no voting machine internet connectivity. The ENR-SCvotes.org page loads with SCYTL at the bottom of the screen and the words "Powered by SCYTL" are visible. Defendant Chris Whitmire clearly denied any interface with public posting from SCYTLE. However, on SCYTLE's Website REAL-TIME reporting is given by the ENR. (Exhibit T) How is real time reporting possible if there is no internet connection? How is that possible if SCYTL is not "counting" the votes in real time?

106.. If there is accessibility to the internet, how can it be proven, without a shadow of a doubt, that hackability, cyber-attacks, and/or data breaches are not possible.

36

107. The Defendant(s) are in direct violation of (SC CODE 16-9-10, 18 U.S.C. § 245).

108.. Defendant(s), South Carolina SEC, falsely stated on the South Carolina SEC website, that machines are not connected to the internet, violating (SC Code 7-3-20).

25 https://www.governing.com/security/south-carolinas-voting-machines-are-vulnerable-to-attacks.html

26 https://www.dhs.gov/sites/default/files/publications/21_0311_key-findings-and-recommendations-related-to-2020-elections_1.pdf

# XII. Privacy Violations

109. The Defendant(s) have partnered with both state agencies and federal agencies. Personal data exchange has exceeded beyond the scope of necessity or legality.

110. According to SC SEC Defendant(s) 2020 end-of-year report, the following agencies are working with the SEC:

- S.C. General Assembly
- S.C. Governor's Office
- S.C. Department of Administration
- S.C. Law Enforcement Division
- U.S. Department of Homeland Security
- U.S. Department of Justice
- Federal Bureau of Investigation
- U.S. Election Assistance Commission
- Multi-State Information Sharing & Analysis Center
- Election Infrastructure Information Sharing & Analysis Center
- County governments & law enforcement
- County boards of voter registration and elections
- S.C. Department of Motor Vehicles
- S.C. Department of Social Services
- S.C. Department of Health & Human Services
- S.C. Department of Health & Environmental Control
- S.C. Department of Mental Health
- S.C. Commission for the Blind
- S.C. Department of Alcohol & Other Drug Abuse Services
- S.C. Department of Disabilities & Special Needs
- S.C. Vocational Rehabilitation Department

111. Defendant(s) partnership with CIS, home to MIS-ISAC (Multi State Information Sharing and Analysis Center) and the EI-ISA, has allowed the disclosure of Plaintiff(s) confidential information to its officers, employees, agents, and CIS cybersecurity partners.

112. This exchange of information amongst agencies pertaining to the Plaintiff(s), as well as the citizenry of South Carolina, is an overreach and in direct violation of (South Carolina Const. art I § 10), which specifically states that "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and unreasonable invasions of privacy shall not be violated."

38

113. U.S. Const., amend. IV. protects the right of privacy against unreasonable searches and seizures by the government.

114. The Privacy Act of 1974 prevents the federal government from making unauthorized disclosure of personal information under its control.

115. Health Information Portability and Accountability Act (HIPAA), ensures that an individual's health information is properly protected by setting use and disclosure standards.

116. The Fourteenth Amendment of the U.S. Constitution prohibits states from making laws that infringe upon the personal autonomy protections granted within the U.S. Constitution.

[27] https://manage.scvotes.org/sites/default/files/Accountability%20Report-Final.pdf) last checked 8/12/22

## XII.  PRAYER FOR RELIEF

117. Plaintiff(s) ask the court, due to the Defendant(s) gross negligence in protecting the vote of South Carolina Citizens, as well as their failure to uphold their oaths made to the South Carolina and United States Constitutions (SC Code 8-3-10), that the following remedies be made:

118.  Plaintiff(s) ask the court for immediate temporary and permanent injunctions of the election machines.

39

119. That South Carolina shall not take active part in the CISA/DHS/CIS partnerships in election processes, as they are in violation of (18 U.S.C. §§ 593, 595).

120. That South Carolina will only use paper ballots, will only allow same-day voting, and will no longer use election machines.

121. That the SC SEC and its leadership, as well as County Election Boards under SEC direction, be disbanded, and their roles be returned to the "elected" position of Secretary of State.

122. That the Secretary of State of SC, remain an elected position, as it holds more transparency and accountability than any other position.

123. That the South Carolina General Election of 2020 be decertified, including all South Carolina midterm elections preceding the General Election of 2020, due to federal overreach, foreign involvement, hackability of election machines, and gross oversight on the part of the Defendant(s).

40

Respectfully submitted this 29th Day of August 2022. By Plaintiff(s)

Donna Zigmantanis

James Darryl Robinson

Faith M. Dowden

Michael D. Brady

Meredith Mumpower

Paige Bickar

Jennifer Newton

Nancy Tiller

Yelizaveta Liokumovich

Michelle Nelson

Alison Case Morgan

Alison K. Starosky

India Roark Springs

Ahman Jacob Lemus Chavez